1

**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:     (619) 798-2006
Facsimile:     (480) 247-4553

2

3

4

5

*Counsel for Plaintiff and the Proposed Class*

6

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

7

8

Case No:_____

9

**COMPLAINT FOR VIOLATIONS OF:**

10

TROY BACKUS, on behalf of himself and
all others similarly situated,

**CAL. BUS. & PROF. CODE §§17200 *et seq.*;**

11

**CAL. BUS. & PROF. CODE §§17500 *et seq.*;**

Plaintiff,

12

**CAL. CIV. CODE §§ 1750 *et seq.*;**

v.

13

**BREACH OF EXPRESS WARRANTIES; AND**

14

H. J. HEINZ COMPANY,

**BREACH OF IMPLIED WARRANTIES**

15

Defendant.

**DEMAND FOR JURY TRIAL**

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

I.    JURISDICTION AND VENUE ...................................................................1

II.   INTRADISTRICT ASSIGNMENT............................................................1

III.  NATURE OF THE ACTION ....................................................................1

IV.   PARTIES .................................................................................................2

V.    NATURE OF TRANS FAT.....................................................................3

VI.   PLAINTIFF'S PURCHASES OF EASY FRIES AND EASY TATER TOTS ............................13

VII.  SPECIFIC MISREPRESENTATIONS, MATERIAL OMISSIONS, AND DECEPTIVE
      ACTS ....................................................................................................14

VIII. EASY FRIES AND EASY TATER TOTS UNNECESSARILY CONTAIN PHO AND
      ARTIFICIAL TRANS FAT....................................................................14

IX.   DEFENDANT'S PRACTICES ARE "UNFAIR" WITHIN THE MEANING OF THE
      CALIFORNIA UNFAIR COMPETITION LAW ...................................15

X.    RELIANCE AND INJURY .....................................................................16

XI.   DELAYED DISCOVERY .......................................................................17

XII.  CLASS ACTION ALLEGATIONS ........................................................17

XIII. CAUSES OF ACTION............................................................................20

XIV.  PRAYER FOR RELIEF ..........................................................................28

XV.   JURY DEMAND ....................................................................................29

APPENDIX A: EASY FRIES AND EASY TATER TOTS ............................................I

CLASS ACTION COMPLAINT

Plaintiff Troy Backus, on behalf of himself, all others similarly situated, and the general public, by and through his undersigned counsel, hereby sues Defendant the H. J. Heinz Company ("Heinz" or "Defendant"), and upon information and belief and investigation of counsel, alleges as follows:

## I.     <u>JURISDICTION AND VENUE</u>

1.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and because more than two-thirds of the members of the class defined herein reside in states other than the states of which Heinz is a resident.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff Troy Backus resides in this District; Plaintiff suffered injuries as a result of Defendant's acts in this District; many of the acts and transactions giving rise to this action occurred in this District; and Defendant (1) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets of this District through the distribution and sale of its products in this District, and (2) is subject to personal jurisdiction in this District.

## II.     <u>INTRADISTRICT ASSIGNMENT</u>

3.     This civil action arises out of the acts and omissions of Defendant Heinz., which occurred in Marin County, California. Pursuant to Civil Local Rule 3-2(c), this action should be assigned to the San Francisco or Oakland Division. Plaintiff requests the San Francisco Division, as it is closer to his home in Marin County.

## III.     <u>NATURE OF THE ACTION</u>

4.     Heinz manufactures, markets, and sells frozen microwave French fries and tater tots containing partially hydrogenated oil ("PHO").

5.     Heinz's frozen microwave French fries and tater tots containing PHO include three different varieties sold under the label of Ore Ida Extra Crispy (collectively "Easy Fries and Easy Tater Tots" or "the Products"), more particularly identified in <u>Appendix A</u> hereto.

Class Action Complaint

6.      PHO is a food additive banned in many parts of the world due to its artificial trans fat content. Artificial trans fat is a toxic carcinogen for which there are many safe and commercially acceptable substitutes. On June 16, 2015, the FDA issued a final determination that PHO is unsafe.[1]

7.      Heinz falsely markets and falsely represents Easy Fries and Easy Tater Tots as free of trans fat; however all Easy Fries and Easy Tater Tots contain dangerous levels of trans fat.

8.      Although safe, low-cost, and commercially acceptable alternatives to artificial trans fat exist, including those used in competing brands and even in a few other Heinz products, Heinz unfairly elects *not* to use safe alternatives in Easy Fries and Easy Tater Tots in order to increase its profits at the expense of the health of consumers.

9.      Additionally, Defendant misleadingly markets its Easy Fries and Easy Tater Tots with an unauthorized health claim. This false advertising deceives consumers into purchasing a product that is harmful to their health.

10.      Plaintiff Troy Backus repeatedly purchased and consumed Easy Fries and Easy Tater Tots during the Class Period defined herein.

11.      This action is brought to remedy Defendant's unlawful conduct. On behalf of the class as defined herein, Plaintiff seeks an order compelling Defendant to, *inter alia*: (1) cease marketing and selling Easy Fries and Easy Tater Tots using the false and unauthorized nutrient content claim "0g trans fat"; (2) conduct a corrective advertising campaign; (3) destroy all misleading and deceptive materials and unsafe Products; (4) award Plaintiff and other Class members restitution, actual damages, and punitive damages to the extent permitted under the law; and (5) pay costs, expenses, and reasonable attorneys' fees.

## IV.   **PARTIES**

12.      Defendant Heinz is a Pennsylvania corporation with its principal place of business in Pennsylvania. Heinz owns, manufactures, and sells Easy Fries and Easy Tater Tots.

---

[1] *See* "Final Determination Regarding Partially Hydrogenated Oils," 80 Fed. Reg. 34650, 34650-34670 (June 17, 2015) (hereinafter "FDA Final Determination").

CLASS ACTION COMPLAINT

13.     Plaintiff Troy Backus is a resident of Marin County, California who repeatedly purchased Easy Fries and Easy Tater Tots for personal and household consumption.

## V.     NATURE OF TRANS FAT

14.     Artificial trans fat is manufactured via an industrial process called partial hydrogenation, in which hydrogen atoms are added to normal vegetable oil by heating the oil to temperatures above 400°F in the presence of ion donor catalyst metals such as rhodium, ruthenium, and nickel.[2] The resulting product is known as partially hydrogenated oil, or PHO, which is the main source of trans fat in the American diet and used in dangerous quantities in Easy Fries and Easy Tater Tots.

15.     PHO was invented in 1901 and patented in 1902 by German chemist Wilhelm Normann. PHO molecules chemically differ from the natural fat molecules in other food products.[3]

16.     Natural fat, except the trace amounts of natural trans fat from ruminant animals, comes in two varieties: (1) fats that lack carbon double bonds ("saturated fat") and (2) fats that have carbon double bonds with the hydrogen atoms on the same side on the carbon chain ("cis fat"). Trans fat, however, has carbon double bonds with hydrogen atoms on opposite sides of its carbon chain.



17.     PHO was initially a "wonder product" attractive to the packaged food industry because it combines the low cost of unsaturated cis fat with the flexibility and long shelf life of saturated fat. Like cis fat, PHO is manufactured from low-cost legumes,[4] while saturated fat is derived from

---

[2] *See* Alice H. Lichtenstein, *Trans Fatty Acids, Plasma Lipid Levels, and Risk of Developing Cardiovascular Disease*, 95 CIRCULATION 2588, 2588-90 (1997).

[3] *See* Alberto Ascherio et al., *Trans Fatty Acids & Coronary Heart Disease*, 340 NEW ENG. J. MED. 94, 94-8 (1999). *See also* Ctr. for Food Safety & Applied Nutrition, U.S. Food & Drug Admin., Questions & Answers About *Trans* Fat Nutrition Labeling (Update 2006) (2003), *available at* http://www.cfsan.fda.gov/%7Edms/qatrans2.html.

[4] e.g., corn oil, soybean oil, peanut oil

CLASS ACTION COMPLAINT

relatively expensive animal and tropical plant sources.[5] Given its versatility, ten years ago PHO was used in 40% of processed packaged foods.[6] Now, given its toxic properties, few food companies continue to use PHO. Defendant, however, has decided not to follow its more responsible peers and cease using PHO, instead unfairly placing profits over public health of people like Plaintiff.

18.     PHO causes cardiovascular heart disease, diabetes, cancer, Alzheimer's disease, and accelerates cognitive decline in diabetics.

**A.     There is a Well-Established Scientific Consensus That Trans Fat is Extremely Harmful**

19.     There is "no safe level" of artificial trans fat intake.[7]

20.     According to the established consensus of scientists, consumers should keep their consumption of trans fat "as low as possible."[8]

21.     In addition, "trans fatty acids are not essential and provide no known benefit to human health."[9] Thus, while "the [Institute of Medicine] sets tolerable upper intake levels (UL) for the highest level of daily nutrient intake that is likely to pose no risk of adverse health effects to almost all individuals in the general population[,] . . . the IOM does **not** set a UL for trans fatty acid because **any** incremental increase in trans fatty acid intake increases the risk of CHD."[10] (emphasis added).

22.     Dariush Mozaffarian of Harvard Medical School writes in the New England Journal of Medicine:

> [F]rom a nutritional standpoint, the consumption of trans fatty acids results in
> considerable potential harm but no apparent benefit. . . . Thus, complete or near-

---

[5] e.g., butter, cream, tallow, palm, coconut oil

[6] Mary Carmichael, *The Skinny on Bad Fat*, Newsweek, Dec. 1, 2003, at 66. *See also* Kim Severson, *Hidden Killer. It's Trans Fat. It's Dangerous. And It's In Food You Eat Every Day*, S.F. Chron., Jan. 30, 2002.

[7] Food & Nutrition Bd., Inst. of Med., *Dietary Reference Intakes For Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids* (2005).

[8] *Id.*

[9] Food Labeling; Health Claim; Phytosterols and Risk of Coronary Heart Disease; Proposed Rule,75 Fed. Reg. 76526, 76542 (Dec. 8, 2010)

[10] *Id.*

CLASS ACTION COMPLAINT

complete avoidance of industrially produced trans fat—a consumption of less than 0.5 percent of the total energy intake—may be necessary to avoid adverse effects and would be prudent to minimize health risks.[11]

23.     Today there is no question about the scientific consensus on trans fat. Dr. Julie Louise Gerberding, former director of the United States Centers for Disease Control and Prevention, writes:

> The scientific rationale for eliminating exposure to artificial trans fatty acids in foods is rock solid. There is no evidence that they provide any health benefit, and they are certainly harmful. These compounds adversely affect both low- and high-density lipoprotein cholesterol levels and increase the risk for coronary heart disease, even at relatively low levels of dietary intake. Gram for gram, trans fats are far more potent than saturated fats in increasing the risk for heart disease, perhaps because they also have pro-inflammatory properties and other adverse effects on vascular endothelium. The strong evidence of harm motivated the Institute of Medicine to issue recommendations that the intake of trans fats be minimized and prompted the [FDA] to require the addition of information about trans fat content to food labels beginning in 2006. Eliminating exposure to these dangerous fats could have a powerful population impact—potentially protecting 30,000 to 100,000 Americans from death related to heart disease each year.[12]

24.     Dr. Mozaffarian further writes:

> Given the adverse effects of trans fatty acids on serum lipid levels, systemic inflammation, and possibly other risk factors for cardiovascular disease and the positive associations with the risk of CHD, sudden death from cardiac causes, and possibly diabetes, the potential for harm is clear. The evidence and the magnitude of adverse health effects of trans fatty acids are in fact far stronger on average than

---

[11] Dariush Mozaffarian et al., *Trans Fatty Acids and Cardiovascular Disease*, 354 N. ENGL. J. MED. 1601, 1608-1609 (2006).

[12] Julie Louise Gerberding, *Safer Fats for Healthier Hearts: The Case for Eliminating Dietary Artificial Trans Fat Intake*, 151 ANN. INTERN. MED. 137-138 (2009)

CLASS ACTION COMPLAINT

those of food contaminants or pesticide residues, which have in some cases received considerable attention.[13]

25.     Given its nature as an artificial chemical not naturally found in any food and the considerable harm that causes to human health, Dr. Walter Willet, also at Harvard Medical School, finds the most direct analogue of trans fat to be not any natural fat but contaminants such as pesticides. He states that the addition of artificial trans fat to food by companies like Heinz "is a food safety issue . . . this is actually contamination."[14]

**B.     Artificial Trans Fat Is So Inherently Dangerous It Has Been Banned by an Increasing Number of American and European Jurisdictions**

26.     In 2008, California became the first state to ban all restaurant food with artificial trans fat, a law affecting approximately 88,000 eating establishments. Trans fats may not be served in California's schools or restaurants in an amount greater than half a gram per serving.[15]

27.     New York City banned trans fat in its 20,000 food establishments in 2006. Similar laws exist in Philadelphia; Baltimore; Stamford, Connecticut; and Montgomery County, Maryland.

28.     A 2004 Danish law restricted all foods to fewer than 2 percent of calories from artificial trans fat. Switzerland made the same restriction in 2008.[16]

29.     After conducting a surveillance study of Denmark's trans fat ban, researchers concluded the change "did not appreciably affect the quality, cost or availability of food" and did not have "any noticeable effect for the consumers."[17]

30.     Similar bans have been introduced in Austria and Hungary. Brazil, Argentina, Chile, and

---

[13] Dariush Mozaffarian et al., *Trans Fatty Acids and Cardiovascular Disease*, 354 N. ENGL. J. MED. 1601 (2006).

[14] Rebecca Coombes, *Trans fats: chasing a global ban*, 343 BRITISH MED. J. (2011).

[15] Cal. Educ. Code § 49431.7; Cal. Health & Saf. Code § 114377.

[16] Andrew Collier, *Deadly Fats: Why Are We still Eating Them?*, The Independent (UK), June 10, 2008.

[17] Mozaffarian, 354 New Eng. J. Med. at 1610; *see also* Stender, Steen, *High Levels of Industrially Produced Trans Fat in Popular Fast Food*, 354 NEW ENG. J. MED. 1650, 1652 (2006).

6

South Africa have all taken steps to reduce or eliminate artificial trans fats from food.[18]

31.    In 2006, a trans fat task force co-chaired by Health Canada and the Heart and Stroke Foundation of Canada recommended capping trans fat content at 2 percent of calories for tub margarines and spreads and 5 percent for all other foods. On September 30, 2009, British Columbia became the first province to impose these rules on all restaurants, schools, hospitals, and special events.[19]

32.    In its European Food and Nutrition Action Plan 2015-2020, the World Health Organization identified one of its goals as "making the European Region trans fat-free."[20] The European Commission is preparing legislation to ban the use of trans fats in the European Union, with a legislative report on a ban that would cover most of Europe anticipated in June 2015.[21]

33.    In 2015, the FDA released its Final Determination Regarding Partially Hydrogenated Oils, in which it declared "PHOs are not [Generally Recognized As Safe] for any use in human food."[22]

34.    The FDA will begin filing its own enforcement actions against companies that use PHOs in 2018.

**C.    The Artificial Trans Fat in Easy Fries and Easy Tater Tots Causes Cardiovascular Disease**

35.    Trans fat raises the risk of CHD more than any other known nutritive substance.[23]

36.    Removing trans fat equivalent to 2% of total calories from the American diet "would prevent approximately 30,000 premature coronary deaths per year, and epidemiologic evidence suggests this number is closer to 100,000 premature deaths annually."[24]

---

[18] Coombes, *Trans fats: chasing a global ban*, 343 BRITISH MED. J. (2011).

[19] *Province Restricts Trans Fat in B.C.*, British Columbia Ministry of Healthy Living and Sport Press Release (2009), *available at* http://www2.news.gov.bc.ca/news_releases_2005-2009/2009HLS0013-000315.htm.

[20] Regional Committee for Europe, *European Food and Nutrition Action Plan 2015-2020*, 64th session.

[21] Basu, J. *European trans fat report 'could lead to ban'*, Food Navigator.com, April 15, 2015.

[22]22 FDA Final Determination, 80 Fed. Reg. 34650, 34651 (June 17, 2015).

[23] Mozaffarian, 354 NEW ENG. J. MED. at 1603.

[24] Alberto Ascherio et al., *Trans Fatty Acids & Coronary Heart Disease*, 340 NEW ENG. J. MED. 94, 94-8 (1999).

37.   "10 to 19 percent of CHD events in the United States could be averted by reducing the intake of trans fat."[25]

38.   By raising LDL levels and lowering HDL levels, trans fat causes a wide variety of dangerous heart conditions, including low flow-mediated vasodilation, coronary artery disease, and primary cardiac arrest.

39.   In a joint Dietary Guidelines Advisory Committee Report, the Department of Health and Human Services and the U.S. Department of Agriculture recognized "[t]he relationship between trans fatty acid intake and LDL cholesterol is direct and progressive, increasing the risk of cardiovascular disease."[26]

40.   The American Heart Association warns, "trans fats raise your bad (LDL) cholesterol levels and lower your good (HDL) cholesterol levels. Eating trans fats increases your risk of developing heart disease."[27]

41.   After a review of literature on the connection between the consumption of artificial trans fat and coronary heart disease, the FDA concluded:

> [B]ased on the consistent results across a number of the most persuasive types of study designs (i.e., intervention trials and prospective cohort studies) that were conducted using a range of test conditions and across different geographical regions and populations . . . the available evidence for an adverse relationship between trans fat intake and CHD risk is strong.[28]

42.   The FDA further found "[t]o date, there have been no reports issued by authoritative

---

[25] Mozaffarian, 354 NEW ENG. J. MED. at 1611.

[26] Dep't of Health & Human Serv. & U.S. Dep't of Agric., 2005 Dietary Guidelines Advisory Committee Report, Section 10 (2005). *See also* FDA Final Determination, 80 Fed. Reg. 34650, 34659 (June 17, 2015) (Research of PHOs show "a progressive and linear cause and effect relationship between <u>trans</u> fatty acid intake and adverse effects on blood lipids that predict CHD risk.")

[27] Am. Heart Ass'n., *Trans Fat Overview*, *available at* http://www.heart.org/HEARTORG/GettingHealthy/FatsAndOils/Fats101/Trans-Fats_UCM_301120_Article.jsp.

[28] Ctr. for Food Safety & Applied Nutrition, U.S. Food & Drug Admin., Questions & Answers About *Trans* Fat Nutrition Labeling.

CLASS ACTION COMPLAINT

sources that provide a level of trans fat in the diet . . . below which there is no risk of [Coronary Heart Disease]."[29] Rather, there "is a positive linear trend between trans fatty acid intake and LDL cholesterol concentration, and therefore there is a positive relationship between trans fatty acid intake and the risk of CHD."[30]

43.    A study investigating the impact of trans fatty acids on heart health provides evidence that:

> [E]ven the lower estimates from the effects [of PHO] on blood lipids would suggest that more than 30,000 deaths per year may be due to the consumption of partially hydrogenated vegetable fat. Furthermore, the number of attributable cases of nonfatal coronary heart disease will be even larger.[31]

44.    A "quantitative estimate of the potential health benefits expected to result from removal of . . . PHOs" described in the FDA Final Determination found that the elimination of PHOs in the American diet will reduce between 18,660 to 54,900 annual CHD cases and between 7,740 to 22,770 annual deaths from CHD.[32]

45.    By taking blood samples from 179 survivors of cardiac arrest and 285 randomly-selected control patients and comparing the top fifth with the bottom fifth of participants by trans fat intake, another study published in the American Heart Association's Circulation found that the largest consumers of trans fat have three times the risk of suffering primary cardiac arrest, even after controlling for a variety of medical and lifestyle risk factors.[33]

46.    Australian researchers observed that heart attack patients possess elevated amounts of

---

[29] 75 Fed. Reg. 76526, 76542 (Dec. 8, 2010).

[30] *Id.*

[31] W.C. Willett et al*., Trans Fatty Acids: Are the Effects only Marginal?* 84 AM. J. PUB. HEALTH 722, 723 (1994).

[32] FDA Final Determination, 80 Fed. Reg. 34650, 34660-1 (June 17, 2015) (based on two different methods 1): association of TFA with CHD risk as shown through prospective observational studies and 2) effects of TFA on total-C/HDL-C plus a combination of emerging CHD risk factor biomarkers.)

[33] Rozenn N. Lemaitre et al., *Cell Membrane Trans-Fatty Acids and the Risk of Primary Cardiac Arrest*, 105 CIRCULATION 697, 697-701 (2002).

CLASS ACTION COMPLAINT

trans fat in their adipose tissue compared to controls, strongly linking heart disease with long-term consumption of trans fat.[34]

47.     Another separate study isolated one of the methods by which trans fat causes atherosclerosis, namely by degrading the function of TGF-β, a protein responsible for preventing the development of atherosclerotic lesions.[35]

48.     TGF-β also functions to suppress cancerous tumors. The same scientists suggest that the degradation of TGF-β may be the reason that trans fat consumption is strongly linked to multiple forms of cancer.[36]

**D.     The Artificial Trans Fat in Easy Fries and Easy Tater Tots Causes Type-2 Diabetes**

49.     Artificial trans fat causes type-2 diabetes.[37]

50.     In particular, trans fat disrupts the body's glucose and insulin regulation system by incorporating itself into cell membranes, causing the insulin receptors on cell walls to malfunction, and in turn elevating blood glucose levels and stimulating further release of insulin.

51.     Researchers at Northwestern University's medical school found mice show multiple markers of type-2 diabetes after eating a high trans fat diet for only four weeks.[38]

52.     By the eighth week of the study, mice fed the diet high in trans fat showed a 500% increase compared to the control group in hepatic interleukin-1β gene expression, one such marker of diabetes, indicating the extreme stress artificial trans fat places on the body.[39]

53.     A 14-year study of 84,204 women found that for every 2 percent increase in energy

---

[34] Peter M. Clifton et al., *Trans Fatty Acids In Adipose Tissue And The Food Supply Are Associated With Myocardial Infarction*. 134 J. NUTR. 874, 874-79 (2004).

[35] Chen, C.L. et al., *A mechanism by which dietary trans fats cause atherosclerosis*, J. of Nut. Biochemistry 22(7) 649-655 (2011).

[36] *Id.*

[37] Am. Heart Ass'n., *Trans Fat Overview*.

[38] Sean W. P. Koppe et al., *Trans fat feeding results in higher serum alanine aminotransferase and increased insulin resistance compared with a standard murine high-fat diet*, 297 AM. J. PHYSIOL. GASTROINTEST LIVER PHYSIOL. 378 (2009).

[39] *Id.*

10

CLASS ACTION COMPLAINT

intake from artificial trans fat, the relative risk of type-2 diabetes was increased by 39 percent.[40]

**E.   The Artificial Trans Fat in Easy Fries and Easy Tater Tots Causes Breast, Prostate, and Colorectal Cancer**

54.   Trans fat is a carcinogen which causes breast, prostate, and colorectal cancer.

55.   A 13-year study of 19,934 French women showed 75 percent more women contracted breast cancer in the highest quintile of trans fat consumption than did those in the lowest.[41]

56.   In a 25-year study of 14,916 U.S. physicians, the doctors in the highest quintile of trans fat intake had more than double the risk of developing prostate cancer than the doctors in the lowest quintile.[42]

57.   A study of 1,012 American males observing trans fat intake and the risk of prostate cancer found "[c]ompared with the lowest quartile of total trans-fatty acid consumption, the higher quartiles gave odds ratios (ORs) equal to 1.58," meaning those in the highest quartile are 58% more likely to contract prostate cancer than those in the lowest.[43]

58.   A 600-person study found an 86 percent greater risk of colorectal cancer in the highest trans fat consumption quartile.[44]

59.   A 2,910-person study found "trans-monounsaturated fatty acids . . . were dose-dependently associated with colorectal cancer risk," which showed "the importance of type of fat in the etiology and prevention of colorectal cancer."[45]

---

[40] Jorge Salmeron et al., *Dietary Fat Intake and Risk of Type 2 Diabetes in Women*, 73 AM. J. CLINICAL NUTRITION 1019, 1023 (2001).

[41] Véronique Chajès et al., *Association between Serum Trans-Monounsaturated Fatty Acids and Breast Cancer Risk in the E3N-EPIC Study.* 167 AM. J. EPIDEMIOLOGY 1312, 1316 (2008).

[42] Jorge Chavarro et al., *A Prospective Study of Blood Trans Fatty Acid Levels and Risk of Prostate Cancer.*, 47 PROC. AM. ASSOC. CANCER RESEARCH 95, 99 (2006).

[43] Xin Liu et al., *Trans-Fatty Acid Intake and Increased Risk of Advanced Prostate Cancer: Modification by RNASEL R462Q Variant*, 28 CARCINOGENESIS 1232, 1232 (2007).

[44] L.C. Vinikoor et al., *Consumption of Trans-Fatty Acid and its Association with Colorectal Adenomas*, 168 Am. J. of Epidemiology 289, 294 (2008).

[45] Evropi Theodoratou et al., *Dietary Fatty Acids and Colorectal Cancer: A Case-Control Study*, 166 AM. J. EPIDEMIOLOGY 181 (2007).

CLASS ACTION COMPLAINT

**F.**      **The Artificial Trans Fat in Easy Fries and Easy Tater Tots Causes Alzheimer's Disease and Cognitive Decline**

60.      Trans fat causes Alzheimer's Disease and cognitive decline.

61.      In a study examining 815 Chicago area seniors, researchers found "increased risk of incident Alzheimer disease among persons with high intakes of . . . trans-unsaturated fats."[46]

62.      The study "observed a strong increased risk of Alzheimer disease with consumption of trans-unsaturated fat."[47]

63.      In a study of 1,486 women with type-2 diabetes, researchers found "[h]igher intakes of . . . trans fat since midlife . . . were [] highly associated with worse cognitive decline . . . ."[48]

64.      The study cautioned "[d]ietary fat intake can alter glucose and lipid metabolism and is related to cardiovascular disease risk in individuals with type-2 diabetes. Because insulin, cholesterol, and vascular disease all appear to play important roles in brain aging and cognitive impairments, dietary fat modification may be a particularly effective strategy for preventing cognitive decline, especially in individuals with diabetes."[49] (citations omitted).

65.      Artificial trans fat also damages the brains of men who consume it. A study conducted by UCSD School of Medicine of 1,018 men, mostly younger men, found trans fat consumption to be strongly correlated to impaired memory.[50] The authors of the study, appearing last year in *Circulation*, the American Heart Association's peer-reviewed journal, conclude that "Greater dTFA [dietary trans fatty acid] was significantly associated with worse word memory in adults aged 20-45 years, often critical years for career building."

66.      Performing a word memory test, each additional gram a day of trans fat consumed was

---

[46] Martha Clare Morris et al., *Dietary Fats and the Risk of Incident Alzheimer Disease*, 60 ARCH. NEUROL. 194, 198-199 (2003).

[47] *Id.*

[48] Elizabeth E. Devore et al., *Dietary Fat Intake and Cognitive Decline in Women with Type 2 Diabetes*, 32 DIABETES CARE 635 (2009).

[49] *Id.*

[50] Golomb, B. et al., *Trans Fat Consumption is Adversely Linked to Memory in Working-Age Adults*, Circulation 2014 130:A15572.

CLASS ACTION COMPLAINT

associated with 0.76 fewer words correctly recalled. The authors suggest trans fat's established pro-oxidant effect and damage to cell energy processes is the pathway by which trans fat consumption damages memory ability.[51]

**G.    The Artificial Trans Fat in Easy Fries and Easy Tater Tots Causes Damage to Vital Organs**

67.    Artificial trans fat damages vital organs, including the heart, by causing chronic systemic inflammation, where the immune system becomes persistently overactive, damages cells, and causes organ dysfunction.[52]

## VI.    PLAINTIFF'S PURCHASES OF EASY FRIES AND EASY TATER TOTS

68.    Plaintiff Troy Backus repeatedly purchased Easy Fries and Easy Tater Tots during the Class Period defined herein.

69.    Mr. Backus purchased approximately 4 boxes of Easy Fries and Easy Tater Tots a year for the past five years, and less often going back about five years earlier.

70.    Mr. Backus purchased Easy Fries and Easy Tater Tots, among other locations, at Safeway located at 137 Corte Madera Town Ctr., Town Center Corte Madera, Corte Madera, CA 94925.

71.    Plaintiff Backus first discovered Defendant's unlawful acts described herein in April 2015, when he learned that Easy Fries and Easy Tater Tots products contained dangerous amounts of artificial trans fat, and caused heart disease, diabetes, cancer, and death.

72.    Plaintiff, in the exercise of reasonable diligence, could not have discovered earlier Defendant's unlawful acts described herein because the association between PHO and trans fat and the

---

[51] *Id.*

[52] *See* Lopez-Garcia *et al., Consumption of Trans Fat is Related to Plasma Markers of Inflammation and Endothelial Dysfunction,* 135 J. NUTR. 562 (2005); *see also* Baer *et al., Dietary fatty acids affect plasma markers of inflammation in healthy men fed controlled diets; a randomized crossover study,* 79 AM. J. CLIN. NUTR. 969 (2004); Mozaffarian & Clarke, *Quantitative effects on cardiovascular risk factors and coronary heart disease risk of replacing partially hydrogenated vegetable oils with other fats and oils,* 63 Euro. J. CLIN. NUTR. 22 (2009); Mozaffarian et al., *Trans Fatty acids and systemic inflammation in heart failure* 80 AM. J. CLIN. NUTR. 1521 (2004).

CLASS ACTION COMPLAINT

dangers of artificial trans fats were known to Defendant, but not to Plaintiff, throughout the Class Period defined herein. Plaintiff is not a nutritionist, food expert, or food scientist, but rather a lay consumer who did not have the specialized knowledge that Defendant had, which otherwise would have enabled him to associate PHO with artificial trans fat, and artificial trans fat with disease. Even today the nature and extensive utilization of artificial trans fats—including that they necessarily exist where partially hydrogenated oil is used an ingredient in a food product—is generally unknown to the average consumer. Moreover, he relied on Defendant's "0g trans fat" claim.

73. Because Plaintiff expected this statement to be true and honest when it is in fact false and misleading, he did not receive the benefit of his purchases. Instead of receiving the benefit of Products free of trans fat, he received products that contained trans fat.

## VII. SPECIFIC MISREPRESENTATIONS, MATERIAL OMISSIONS, AND DECEPTIVE ACTS

74. During the Class Period, Easy Fries and Easy Tater Tots were made with PHO yet contained the deceptive health and wellness claim "0g Trans Fat" prominently displayed on the front of the products' packaging. Exemplary photos of the packaging of the product are attached hereto with Appendix A.

75. **Misleading "0g Trans Fat" claims:** During the Class Period, Defendant marketed Easy Fries and Easy Tater Tots with the claim "0g Trans Fat" prominently displayed on the front of the Products' packaging.

76. This language was part of an intentional campaign to deceptively market Easy Fries and Easy Tater Tots as healthful.

77. Defendant's conduct is especially egregious because French fries and tater tots, classic American snacks, contain no trans fat and do not pose the serious health consequences associated with Easy Fries and Easy Tater Tots.

78. Moreover, the "0g Trans Fat" claim is an unauthorized nutrient content claim.

## VIII. EASY FRIES AND EASY TATER TOTS UNNECESSARILY CONTAIN PHO AND ARTIFICIAL TRANS FAT

79. Defendant's use of PHO in Easy Fries and Easy Tater Tots is unnecessary. There are

14

several safe substitutes for PHO and artificial trans fat. In fact, Defendant manufactures and distributes other French fry products with alternative formulations that do not contain artificial trans fat. For example, Defendant manufactures and sells "Ore Ida Extra Crispy Fast Food Potatoes," which contain no PHO.

80.    Similarly, several manufacturers of competing frozen French fry products have responsibly decided to refrain from adding artificial trans fat to their products.

81.    Although commercially viable alternative formulations and substitutes for PHO were and are available, Defendant elects not to use them in Easy Fries and Easy Tater Tots in order to increase its profits.

## IX.  DEFENDANT'S PRACTICES ARE "UNFAIR" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW

82.    Defendant's practices as described herein are "unfair" within the meaning of the California Unfair Competition Law because its conduct is immoral, unethical, unscrupulous, and substantially injurious to consumers, and the utility of the conduct to Defendant does not outweigh the gravity of the harm to Defendant's victims.

83.    Plaintiff's claim for unfair business practices is independent of his claim for false advertising. Even absent Heinz's false advertising, the sale of Easy Fries and Easy Tater Tots violates the UCL.

84.    In particular, while Defendant's use of PHO in Easy Fries and Easy Tater Tots may have some utility in that it allows Defendant to realize higher profit margins than if it used safe alternatives, this utility is small and far outweighed by the gravity of the serious health harm Heinz inflicts upon consumers.

85.    Defendant's conduct injures competing manufacturers of frozen French fries and tater tots that do not engage in its unlawful, unfair, and immoral behavior, especially given Defendant's large market share and the limited shelf space in retailers' packaged food sections.

86.    Further, Defendant's practices violate public policy as declared by specific constitutional, statutory, or regulatory provisions, including the California Health and Safety Code § 114377, California Education Code § 49431.7 and the FDA Final Determination.

15

87.     Defendant's actions also violate public policy by causing the United States, California, and every other state to pay—via Medicare, Medicaid, Affordable Care Act Exchange subsidies, Veterans' health programs, public employee and retiree health insurance, and other programs—for treatment of trans fat-related illnesses.

88.     Further, the injury to consumers from Defendant's practices is substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

## X.     RELIANCE AND INJURY

89.     When purchasing Easy Fries and Easy Tater Tots, Plaintiff was seeking products of particular qualities, including products that did not negatively affect blood cholesterol levels or the health of his cardiovascular system, and products made with natural, healthy ingredients.

90.     Plaintiff purchased Easy Fries and Easy Tater Tots believing they had the qualities he sought based on the Products' deceptive labeling, but the Products were actually unsatisfactory to him for the reasons described herein. Indeed, Easy Fries and Easy Tater Tots are not fit for human consumption and have a value of $0.

91.     Easy Fries and Easy Tater Tots cost more than similar products without the misleading labeling, and would have cost less, for example demanded less in the marketplace, absent Defendant's false and misleading statements and material omissions. Thus, Easy Fries and Easy Tater Tots were worth less than what Plaintiff paid for them.

92.     Plaintiff, on one or more occasions, would not have purchased Easy Fries and Easy Tater Tots absent Defendant's misrepresentations.

93.     Plaintiff purchased Easy Fries and Easy Tater Tots instead of competing products based on the false statements and misrepresentations described herein.

94.     Plaintiff lost money as a result of Defendant's unlawful behavior. Plaintiff altered his position to his detriment and suffered loss in an amount equal to the amount he paid for Easy Fries and Easy Tater Tots.

95.     Plaintiff suffered physical injury when he repeatedly consumed Defendant's Easy Fries and Easy Tater Tots, because consuming artificial trans fat in *any* quantity inflames and damages vital organs and increases the risk of heart disease, diabetes, cancer and death.

## XI.     DELAYED DISCOVERY

96.     Plaintiff did not discover that Defendant's labeling of the Products was false, deceptive, or misleading until April 2015, when he learned that Easy Fries and Easy Tater Tots contain trans fat and that foods high in trans fat—such as Easy Fries and Easy Tater Tots —are harmful to human health because of their role in causing coronary heart disease, type-2 diabetes, and cancer. Until this time, he lacked knowledge regarding the facts of their claims against Defendant.

97.     Plaintiff is a reasonably diligent consumer who exercised reasonable diligence in his purchase, use, and consumption of the Products. Nevertheless, he would not have been able to discover Defendant's deceptive practices and lacked the means to discover them given that, like nearly all consumers, he is not an expert on nutrition and does not typically read or have access to scholarly journals such as The Journal of Nutrition,[53]  The European Journal of Clinical Nutrition,[54] and The New England Journal of Medicine,[55] where the scientific evidence of artificial trans fat's dangers has been published. Furthermore, Defendant's labeling practices—in particular, representing Easy Fries and Easy Tater Tots as having "0g trans fat"—actively impeded Plaintiff's and the Class' abilities to discover the dangerous effects of the Products throughout the Class Period.

## XII.     CLASS ACTION ALLEGATIONS

98.     Plaintiff brings this action on behalf of himself and all others similarly situated (the "Class"), excluding Defendant's officers, directors, and employees, and the Court, its officers and their

---

[53] Peter M. Clifton et al., *Trans Fatty Acids In Adipose Tissue And The Food Supply Are Associated With Myocardial Infarction*, 134 J. Nutr. 874, 874-79 (2004).

[54] A. Tavani et al., *Margarine intake and risk of nonfatal acute myocardial infarction in Italian women*, 51 Eur. J. Clin. Nutr. 30–32 (1997) (estimating a 50 percent greater risk of heart attack in women with high consumption of margarine, an association "independent of body mass index, history of hypertension and hyperlipidemia").

[55] Mozaffarian, 354 New Eng. J. Med. at 1611 ("10 to 19 percent of CHD events in the United States could be averted by reducing the intake of trans fat").

CLASS ACTION COMPLAINT

1  families.

2  99.   The Class is defined as follows:

3  All persons who purchased in the United States, on or after January 1, 2008, for

4  household or personal use, frozen fries or tater tots manufactured or distributed by

5  the H. J. Heinz Company containing partially hydrogenated oil and the labeling

6  claim "0g Trans Fat."

7  100.   Questions of law and fact common to Plaintiff and the Class include:

8    a.   Whether Defendant communicated a health and wellness message through

9         Easy Fries and Easy Tater Tots ' packaging;

10   b.   Whether that message was material, or likely to be material, to a

11        reasonable consumer;

12   c.   Whether that message was false, at variance with the truth, misleading,

13        likely to deceive, and/or had the capacity to deceive the public and/or a

14        reasonable consumer;

15   d.   Whether Defendant fraudulently omitted material information in

16        advertising Easy Fries and Easy Tater Tots as healthy;

17   e.   Whether the class is entitled to actual damages, restitution, rescission,

18        punitive damages, attorneys' fees and costs, injunctive, and/or any other

19        relief;

20   f.   Whether any applicable statute of limitations should be tolled on behalf of

21        the Class;

22   g.   Whether Defendant's conduct constitutes violations of California's False

23        Advertising Law;

24   h.   Whether Defendant's conduct was immoral, unscrupulous, or offensive of

25        public policy because Defendant advertised Easy Fries and Easy Tater

26        Tots to people deliberately seeking a healthy option despite knowing of

27        the dangers from its artificial trans fat content;

28   i.   Whether Defendant's conduct constitutes a violation of the California

18

CLASS ACTION COMPLAINT

CLRA;

j.    Whether Defendant's conduct constitutes a violation of the unlawful prong of California's Unfair Competition Law;

101.    By purchasing Easy Fries and Easy Tater Tots, all Class members were subjected to the same wrongful conduct.

102.    Plaintiff's claims are typical of the Class' claims because all Class members were subjected to the same unlawful, unfair, and deceptive conduct when they purchased Easy Fries and Easy Tater Tots and suffered economic injury.

103.    Plaintiff will fairly and adequately protect the interests of the Class, has no interests that are incompatible with the interests of the Class, and has retained counsel competent and experienced in class litigation.

104.    The Class is sufficiently numerous, as it includes hundreds of thousands of individuals, if not millions, who purchased Easy Fries and Easy Tater Tots throughout the United States during the Class Period.

105.    Class representation is superior to other options for the resolution of the controversy. The relief sought for each Class member is small, as little as one or two dollars for some Class members. Absent the availability of class action procedures, it would be infeasible for Class members to redress the wrongs done to them.

106.    Defendant has acted on grounds applicable to the Class, thereby making final injunctive relief or declaratory relief appropriate concerning the Class as a whole.

107.    Questions of law and fact common to the Class predominate over any questions affecting only individual members.

108.    Class treatment is appropriate under Fed. R. Civ. P. 23(a) and both Fed. R. Civ. P. 23(b)(2) and 23(b)(3). Plaintiff does not contemplate class notice if the class is certified under Fed. R. Civ. P. 23(b)(2), which does not require notice. Plaintiff contemplates notice via publication if the class is certified under Fed. R. Civ. P. 23(b)(3) or if the Court determines class notice is required notwithstanding that notice is not required under Fed. R. Civ. P. 23(b)(2). Plaintiff will, if notice is required, confer with Defendant and seek to present the Court with a stipulation and proposed order on

19

the details of a class notice plan.

## XIII.    CAUSES OF ACTION

### First Cause of Action

**California Unfair Competition Law, Unlawful Prong**

**Cal. Bus. & Prof. Code §§ 17200 *et seq.***

109.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

110.    Defendant has made and distributed, in interstate commerce and in this District, products that make false or misleading statements of fact regarding their content. Easy Fries and Easy Tater Tots were placed into interstate commerce by Defendant and sold throughout the country and in this District.

111.    Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

112.    The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "unlawful" business acts and practices in that Defendant's conduct violates the California False Advertising Law, and the California Consumer Legal Remedies Act, as alleged herein.

113.    Defendant's conduct is further "unlawful" because it violates § 43(a) the Lanham Act, 15 U.S.C. § 1125(a), in that Defendant's advertising constitutes false statements of fact in interstate commerce about its own and other products, which were material in that they were likely to influence consumers' purchasing decisions, and which had a tendency to deceive, or actually deceived, a substantial segment of Defendant's audience, resulting in injury.

114.    Defendant's conduct is further "unlawful" because it violates the Federal Food, Drug and Cosmetic Act ("FDCA"), specifically, (a) 21 U.S.C. § 343(a), which deems food misbranded when the label contains a statement that is "false or misleading in any particular," and (b) 21 C.F.R. § 101.13(i)(3), which bars nutrient content claims voluntarily placed on the front of a product label that are "false or misleading in any respect."

115.    Defendant further violates the FDCA's implementing regulation, 21 C.F.R. § 1.21, because Easy Fries and Easy Tater Tots' packaging fails to reveal material facts, namely the dangers of

PHO described in detail herein, "in light of other representations," namely the specific statements described herein as misleading.

116.    Defendant's conduct further violates the California Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code § 110660, which deems food products "misbranded" if their labeling is "false or misleading in any particular," and Health & Safety Code § 110670, which bars nutrient content claims voluntarily placed on the front of a product label that fail to comply with the federal regulation for nutrient content claims (i.e., "may not be false or misleading in any respect").

117.    Defendant's conduct also violates the following sections of the Sherman Law:

• § 110100 (adopting all FDA food labeling regulations as state regulations);

• § 110290 ("In determining whether the labeling or advertisement of a food . . . is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these shall be taken into account. The extent that the labeling or advertising fails to reveal facts concerning the food . . . or consequences of customary use of the food . . . shall also be considered.");

• § 110390 ("It is unlawful for any person to disseminate any false advertisement of any food . . . . An advertisement is false if it is false or misleading in any particular.");

• § 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food . . . that is falsely advertised.");

• § 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

• § 110400 ("It is unlawful for any person to receive in commerce any food . . . that is falsely advertised or to deliver or proffer for delivery any such food . . . .");

• § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulations adopted pursuant thereto.");

• § 110680 ("Any food is misbranded if its labeling or packaging does not conform to the requirements of Chapter 4 (commencing with Section 110290).");

CLASS ACTION COMPLAINT

• § 110705 ("Any food is misbranded if any word, statement, or other information required pursuant to this part to appear on the label or labeling is not prominently placed upon the label or labeling and in terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.");

• § 110760 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.");

• § 110765 ("It is unlawful for any person to misbrand any food."); and

• § 110770 ("It is unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.").

118.    Defendant's conduct may violate additional provisions of the Sherman Law.

119.    All of the challenged labeling statements made by Defendant thus constitute violations of the FDCA and the Sherman Law and, as such, violated the "unlawful" prong of the UCL.

120.    Defendant leveraged its deception to induce Plaintiff and members of the Class to purchase products that were of lesser value and quality than advertised.

121.    Defendant's conduct is further "unlawful" because it violates the Federal Food, Drug, and Cosmetic Act ("FDCA"), specifically, the Food Additives Amendment of 1958, which deems a food additive unsafe unless it has met two exceptions, neither of which the PHO used in Easy Fries and Easy Tater Tots has met. 21 U.S.C. §§ 348, 342.

122.    Plaintiff suffered injury in fact and lost money or property as a result of Defendant's deceptive advertising: he was denied the benefit of the bargain when he decided to purchase the Products over competitor products that are less expensive and/or contain no artificial trans fat.

123.    Had Plaintiff been aware of Defendant's false and misleading advertising tactics, he would not have purchased the Products, and had Defendant not advertised them in a fraudulent manner, he would have paid less for them.

124.    Further, Defendant's practices are unfair because they violate public policy as declared by specific constitutional, statutory, or regulatory provisions, including those policies embodied in the California Health and Safety Code and California Education Code.

125.    Further, Defendant's practices are unfair because the injury to consumers from Defendant's practices is substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided

126.    In accordance with Cal. Bus. & Prof Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign. Plaintiff intends to purchase the Products in the future when Defendant ceases its unfair business practices and removes trans fat.

127.    Plaintiff also seeks an order for the restitution of all monies from the sale of the Products which were acquired through acts of unlawful, unfair, and/or fraudulent competition.

128.    Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of Easy Fries and Easy Tater Tots, which were acquired through acts of unfair competition.

### Second Cause of Action

### California Unfair Competition Law, Fraudulent Prong

### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

129.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

130.    Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

131.    Defendant leveraged its deception to induce Plaintiff and members of the Class to purchase products that were of lesser value and quality than advertised.

132.    Plaintiff suffered injury in fact and lost money or property as a result of Defendant's deceptive advertising: he was denied the benefit of the bargain when he decided to purchase Easy Fries and Easy Tater Tots over competitor products, which are less expensive and/or contain no artificial trans fat.

133.    Had Plaintiff been aware of Defendant's false and misleading advertising tactics, he would not have purchased Easy Fries and Easy Tater Tots, and had Defendant not advertised it in a fraudulent manner, Plaintiff would have paid less for them.

23

134.    The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "fraudulent" business acts and practices in that Defendant's conduct has a likelihood, capacity, or tendency to deceive Plaintiff, the Class, and the general public.

135.    In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

136.    Plaintiff further seeks an order for the restitution of all monies from the sale of the Products which were acquired through acts of unlawful, unfair, and/or fraudulent competition.

### Third Cause of Action

**California Unfair Competition Law, Unfair Prong**

**Cal. Bus. & Prof. Code §§ 17200 *et seq.***

137.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

138.    Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

139.    Defendant leveraged its deception to induce Plaintiff and members of the Class to purchase products that were of lesser value and quality than advertised.

140.    Plaintiff suffered injury in fact and lost money or property as a result of Defendant's deceptive advertising: he was denied the benefit of the bargain when he decided to purchase Easy Fries and Easy Tater Tots over competitor products, which are less expensive and/or contain no artificial trans fat.

141.    Had Plaintiff been aware of Defendant's false and misleading advertising tactics, he would not have purchased Easy Fries and Easy Tater Tots, and had Defendant not advertised it in a fraudulent manner, Plaintiff would have paid less for them.

142.    The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "unfair" business acts and practices because Defendant's conduct is:

a.     immoral, unethical, unscrupulous, and offends public policy;

b.   the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct; and

c.   the injury to consumers caused by Defendant's conduct is substantial, not outweighed by any countervailing benefits to consumers or competition, and not one that consumers themselves could reasonably have avoided.

143.   The business practices and omissions of Defendant as alleged herein further constitute "unfair" business acts and practices in that their conduct is immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to Defendant's victims.

144.   Further, Defendant's practices are unfair because they violate public policy as declared by specific constitutional, statutory, or regulatory provisions, including those policies embodied in the California Health and Safety Code, California Education Code and the FDA Final Determination.

145.   Further, Defendant's practices are unfair because the injury to consumers from Defendant's practices is substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

146.   In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

147.   Plaintiff further seeks an order for the restitution of all monies from the sale of Easy Fries and Easy Tater Tots which were acquired through acts of unlawful, unfair, and/or fraudulent competition.

**Fourth Cause of Action**

**California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq*.**

148.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

149.   In violation of Cal. Bus. & Prof. Code §§ 17500 *et seq*., the advertisements, labeling, policies, acts, and practices described herein were designed to, and did, result in the purchase and use of

Easy Fries and Easy Tater Tots without the knowledge that they contained harmful amounts of toxic artificial trans fat.

150.    Defendant knew and/or reasonably should have known that the labels on Easy Fries and Easy Tater Tots were untrue and/or misleading.

151.    As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

**Fifth Cause of Action**

**California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.***

152.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

153.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

154.    Defendant's policies, acts, and practices were designed to, and did, result in the purchase and use of the Products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

   a.    § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

   b.    § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

   c.    § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

   d.    § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

155.    As a result, Plaintiff and the Class have suffered irreparable harm and are entitled to injunctive relief and restitution.

156.    As a further result, Plaintiff and the Class have suffered damages, and because the conduct was deliberate, immoral, oppressive, made with malice and/or contrary to public policy, they are entitled to punitive or exemplary damages.

CLASS ACTION COMPLAINT

157.    In compliance with Civ. Code § 1782, Plaintiff sent Defendant written notice of his claims on April 23, 2015.

158.    Pursuant to section 1782 *et seq.* of the CLRA, Plaintiff notified Defendant in writing by certified mail of the particular violations of § 1770 of the Act as to the Products and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act. Defendant's wrongful business practices regarding the Products constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendant is still representing that the Products have characteristics, uses, benefits, and abilities which are false and misleading, and have injured Plaintiff and the Class.

159.    Defendant Heinz received Plaintiff's written notice on April 28, 2015.

## Sixth Cause of Action

### Breach of Express Warranty

160.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

161.    During the class period, Defendant made written representations to the public, including Plaintiff, by its advertising and packaging that claimed Easy Fries and Easy Tater Tots contain "0g Trans Fat."

162.     These promises and related promises printed on the label became part of the basis of the bargain between the parties and thus constituted an express warranty.

163.    Thereon, Defendant sold the goods to Plaintiff and other consumers who bought the goods from Defendant.

164.    However, Defendant breached this express warranty in that Easy Fries and Easy Tater Tots do not contain "0g Trans Fat" because they contain partially hydrogenated oil which necessarily contains artificial trans fat, a toxic substance known to increase the risk of coronary heart disease, cancer, Alzheimer's disease, type-2 diabetes, stroke, and other ailments.

165.    As a result of this breach, Plaintiff and other consumers in fact did not receive goods as warranted by Defendant.

166.   As a proximate result of this breach of warranty by Defendant, Plaintiff and other consumers have been damaged in an amount to be determined at trial.

**Seventh Cause of Action**

**Breach of Implied Warranty of Merchantability**

167.   Plaintiff realleges, and incorporates by reference each and every allegation contained elsewhere in this Complaint, as if fully set forth herein.

168.   Defendant, through its acts and omissions set forth herein, in the sale, marketing, and promotion of the Products, made representations to Plaintiff and the Class, on the Products' labels, that the Products contained no trans fat.

169.   Plaintiff and the Class bought the Products manufactured, advertised, and sold by Defendant, as described herein.

170.   Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was in the sale to Plaintiff and other members of the Class an implied warranty that those goods were merchantable.

171.   Defendant breached that implied warranty, however, in that the Products are not fit for their ordinary purpose and do not conform with the representations on their labels, as set forth in detail herein.

172.   As an actual and proximate result of Defendant's conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that they did not conform to the promises and affirmations made on the container or label of the goods.

173.   Plaintiff and Class have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the Products' purchase price.

**XIV.   PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for judgment against Defendant as follows:

A.   An order confirming that this class action is properly maintainable as a nationwide class action as defined above, appointing Plaintiff and his undersigned counsel to represent the Class, and requiring Defendant to bear the cost of class notice;

28

B.     Where authorized by law and referenced in this Complaint, an order requiring Defendant to pay damages to Plaintiff and class members so that they may be restored any money which may have been acquired by means of any unfair, deceptive, unconscionable, fraudulent, or negligent action;

C.     An order requiring Defendant to disgorge any benefits received from Plaintiff and/or unjust enrichment realized as a result of its improper and misleading advertising and marketing of Easy Fries and Easy Tater Tots ;

D.     An award of punitive damages to the extent allowable by law and referenced in the Complaint, in an amount to be proven at trial;

E.     An order requiring Defendant to cease and desist its deceptive, unconscionable, and fraudulent practices;

F.     An order requiring Defendant to engage in a corrective advertising campaign;

G.     An award of pre-judgment and post-judgment interest;

H.     An award of attorneys' fees and costs; and

I.     Such other and further relief as this Court may deem just, equitable or proper.

## XV.    **JURY DEMAND**

Plaintiff demands a trial by jury on his claims for damages.

DATED: June 18, 2015               Respectfully Submitted,


/s/ Gregory S. Weston
**THE WESTON FIRM**
GREGORY S. WESTON
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:    (619) 798-2006
Facsimile:    (480) 247-4553

**Counsel for Plaintiff and the Proposed Class**

**Appendix A: Easy Fries and Easy Tater Tots**

- Ore Ida Extra Crispy Easy Fries Golden Fries

- Ore Ida Extra Crispy Easy Fries Golden Crinkles

- Ore Ida Extra Crispy Easy Tater Tots Crispy Crowns







I





CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





III